**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

FORD MOTOR CREDIT COMPANY LLC,

Plaintiff,

v.

DENNIS PHILLIPS,

Defendant.

Case No. 4:26-cv-01249

**JURY TRIAL DEMANDED**

# COMPLAINT

Plaintiff Ford Motor Credit Company LLC ("Ford Credit"), by and through its attorneys, alleges as follows:

## NATURE OF THE ACTION

1. Ford Credit brings this action to, among other things, enforce the continuing guaranty that Defendant Dennis Phillips ("Mr. Phillips" or "Guarantor") executed in favor of Ford Credit in connection with certain wholesale finance lending Ford Credit provided to automobile dealership Broadway Ford Truck Sales, Inc. (the "Dealership").

2. Guarantor is in default on his obligations to Ford Credit, having, among other things, failed to remit to Ford Credit amounts due and owing pursuant to the terms of his continuing guaranty.

## THE PARTIES

3. Ford Credit is a limited liability company organized under the laws of the State of Delaware, and it is authorized to do business in Missouri.

4. Ford Credit's sole member is Ford Holdings LLC, a limited liability company organized under the laws of the State of Delaware with a principal place of business located at One American Road, Dearborn, Michigan 48126.

5. Ford Holdings LLC is directly and wholly owned by Ford Motor Company, a Delaware corporation with a principal place of business located at One American Road, Dearborn, Michigan 48126.

6. Ford Credit's principal place of business is located at One American Road, Dearborn, Michigan 48126.

7. On or about April 20, 2007, Ford Motor Credit Company converted from a Delaware corporation to a Delaware limited liability company pursuant to Sections 228 and 266 of the Delaware General Corporation Law.

8. Accordingly, for jurisdictional purposes, Ford Credit is a citizen of Delaware and Michigan.

9. Mr. Phillips owned and operated the Dealership, located at 812 E. Taylor Ave., Saint Louis, Missouri 63147.

10. Upon information and belief, Mr. Phillips is domiciled at 3613 Tripoli Blvd., Punta Gorda, Florida 33950.

11. For jurisdictional purposes, Mr. Phillips is a citizen of Florida that is subject to the jurisdiction of this Court pursuant to the facts set forth below.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the case pursuant to 29 U.S.C. § 1332(a), as there exists complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events, transactions and omissions giving rise to the claims in this action occurred in Saint Louis, Missouri.

## THE AGREEMENTS BETWEEN FORD CREDIT, THE DEALERSHIP, AND MR. PHILLIPS

### A. The Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement

14. On or around December 18, 1997, the Dealership executed an Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement (the "Wholesale Agreement").

15. A true copy of the Wholesale Agreement is attached as **Exhibit A**.

16. The Dealership executed the Wholesale Agreement to induce Ford Credit to provide financing to be used by the Dealership to purchase new and used motor vehicles (commonly known as floorplan financing). *See* Exhibit A, preamble.

17. Amounts advanced by Ford Credit under the Wholesale Agreement are called "Advances." *Id.* ¶ 1.

18. In exchange for the financing provided under the Wholesale Agreement, the Dealership agreed to "pay to Ford Credit, upon demand, the unpaid balance (or so much thereof as may be demanded) of all Advances plus Ford Credit's interest and flat charges with respect thereto …." *Id.* ¶ 3.

19. In exchange for the financing provided under the Wholesale Agreement, the Dealership also granted Ford Credit a security interest in various items of collateral, including motor vehicles, proceeds from the sale of those motor vehicles, and rebates or refunds owed to the Dealership. *Id.* ¶ 4.

20. Events of default under the Wholesale Agreement are defined to include the following:

> (a) "[the Dealership] shall fail to promptly pay any amount now or hereafter owing to Ford Credit as and when the same shall become due and payable, or
>
> (b) [the Dealership] shall fail to duly observe or perform any other obligation secured hereby, or
>
> (c) Any representation made by [the Dealership] to Ford Credit shall prove to have been false or misleading in any material respect as of the date on which the same was made, or
>
> (d) A proceeding in bankruptcy, insolvency or receivership shall be instituted by or against [the Dealership] or [the Dealership's] property."

*Id.* ¶ 9.

21. Upon default, Ford Credit is entitled to accelerate, and declare immediately due and payable, any or all of the Advances, plus accrued interest and flat charges, and to take immediate possession of all property in which it has a security interest. *Id.*

22. In the event Ford Credit is required to resort to legal process to enforce its rights under the Wholesale Agreement, the Dealership must "pay reasonable attorneys' fees and legal expenses incurred by Ford Credit in connection with the repossession and sale of any such property." *Id.*

**B. The Security Agreement**

23. On November 15, 2011 the Dealership executed a Security Agreement.

24. A true copy of the Security Agreement is attached as **Exhibit B**.

25. Pursuant to the Security Agreement, the Dealership granted Ford Credit a security interest in:

(a) "All equipment, fixtures, furniture, demonstrators and service vehicles, supplies and machinery and other goods of every kind.

(b) All motor vehicles, tractors, trailers, service parts and accessories and other inventory of every kind and any accessions thereto.

(c) All accounts, instruments, chattel paper, general intangibles, contract rights, documents and supporting obligations thereto."

*See id.*

26. The term "Collateral" will be used throughout the remainder of this Complaint to refer, collectively, to all property, accounts, papers, and rights in which the Dealership granted Ford Credit a security interest pursuant to the Wholesale Agreement and/or the Security Agreement.

**C. The Continuing Guaranty**

27. On December 11, 2018, Guarantor executed a Continuing Guaranty (the "Continuing Guaranty").

28. A true copy of the Continuing Guaranty is attached as **Exhibit C**.

29. Guarantor provided the Continuing Guaranty for the express purpose of inducing Ford Credit "to make loans to and/or make advances" under the Wholesale Agreement, and "to purchase or otherwise acquire retail installment sale contracts, conditional sale contracts, chattel mortgages, or other security instruments or to otherwise extend credit to or do business with" the Dealership. *Id.*

30. Under the Continuing Guaranty, Guarantor "unconditionally" agreed:

(a) to guarantee that the Dealership "will fully, promptly, and faithfully perform, pay and discharge all [of the Dealership's] present and future obligations to [Ford Credit]";

(b) "without Ford Credit first having to proceed against [the Dealership] … to pay on demand all sums due and to become due to [Ford Credit] from [the Dealership] and all losses, costs, attorney's fees or expenses which [Ford Credit] may suffer by reason of [the Dealership's] default"; and

(c) "to be bound by and on demand to pay any deficiency established by a sale of paper or security held with or without notice to [him]; together with a reasonable attorney's fee (15% if permitted by law) if placed with an attorney for collection from [him]." *Id.*

**GUARANTOR'S DEFAULT**

31. On or around April 7 and April 8, 2026, Ford Credit conducted a two-day physical audit of the Dealership's vehicle inventory.

32. During that audit, Ford Credit identified twenty-six (26) instances where the Dealership had sold vehicles and received sale proceeds, but for which the Dealership had failed to timely remit payoffs to Ford Credit.

33. As a result, the Dealership owed to Ford Credit, and Ford Credit demanded that the Dealership immediately pay $1.5 million to Ford Credit.

34. The Dealership subsequently initiated an electronic funds transfer ("DEFT") to Ford Credit for the demanded amount, but the DEFT was returned due to insufficient funds.

35. The Dealership claimed that its bank had a daily wire limit of $1 million and purported to arrange to pay the $1.5 million that was due over the course of the next week.

36. In the meantime, Ford Credit scheduled a further physical audit of the Dealership's inventory on or about April 15 and 16, 2026.

37. As a result of that further audit, Ford Credit identified additional instances where the Debtor had sold vehicles and received sale proceeds but had not timely remitted payoffs to Ford Credit.

38. As a result, the Dealership owed to Ford Credit, and Ford Credit demanded immediate payment of an additional $1.4 million.

39. The Dealership ultimately failed to pay the demanded amount, and Ford Credit declared a default under its agreements with the Dealership.

40. Ford Credit subsequently discovered that the Dealership had also failed to remit payoffs to Ford Credit for numerous vehicles that it had purportedly sold to customers with delayed payment privileges (primarily municipal entities including police or fire departments).

41. In numerous instances, the Dealership had received sales proceeds from such customers but failed to remit payoffs due to Ford Credit upon receipt of such proceeds.

42. As a result, the Dealership was in default of its obligations to Ford Credit for an additional $2 million beyond the amounts identified in Ford Credit's inventory audits.

43. Ford Credit demanded that the Dealership immediately pay the additional amounts identified as owing, but the Dealership failed to do so.

44. Failing to pay off amounts financed for floor-planned vehicles is an event of default under the Dealership's Wholesale Agreement and is commonly referred to as

being "out of trust." A sale which is made "out of trust" is referred to as a "sale out of trust" or "SOT."

45. On or about April 26, 2026, Ford Credit demanded that Guarantor pay $33,089,576.01, the entire indebtedness then owed by the Dealership and Guarantor to Ford Credit pursuant to the terms of the Continuing Guaranty.

46. A true copy of the demand letter sent by Ford Credit to Guarantors on April 26, 2026 is attached as **Exhibit D**.

47. Since the date of Ford Credit's demand, it has liquidated certain collateral from the Dealership.

48. As of the date of July 28, 2026, and despite Ford Credit's demand and subsequent liquidation efforts, not less than $26,229,265.35 (the "Indebtedness") remains due and owing from Guarantor to Ford Credit pursuant to the terms of the Continuing Guaranty.

## FIRST CAUSE OF ACTION
**(Breach of Guaranty)**

49. Ford Credit realleges and incorporates by reference the allegations in Paragraphs 1 through 47.

50. Guarantor personally and unconditionally guaranteed the performance by the Dealership of all duties and obligations due under the Wholesale Agreement.

51. Guarantor breached his obligations under the Continuing Guaranty by, among other things, failing to pay the Indebtedness upon demand.

52. Ford Credit is entitled to recover from Guarantor, as damages, the Indebtedness, together with attorneys' fees and other costs of collection.

53. Accordingly, Guarantor is liable to Ford Credit for the Indebtedness, plus interest (which continues to accrue), as well as any other expenses, costs, disbursements,

and attorneys' fees Ford Credit has incurred or will incur in connection with its efforts to enforce the Continuing Guaranty and collect the Indebtedness.

WHEREFORE, Ford Credit respectfully requests that the Court enter judgment in its favor against Guarantor in the amount of $26,229,265.35, together with additional costs, interest, attorneys' fees, and such other and further relief as this Court deems proper.

**JURY DEMAND**

Ford Credit demands a trial by jury on all issues so triable.

Dated: August 5, 2026

Respectfully submitted,

**SPENCER FANE LLP**

*/s/ Catherine L. Schwarze*
Eric C. Peterson, 62429(MO)
Catherine L. Schwarze, 71161(MO)
1 North Brentwood Blvd., Suite 1200
St. Louis, MO 63105
(314) 863-7733
(314) 862-4656 – Fax
epeterson@spencerfane.com
cschwarze@spencerfane.com

and

**PHILLIPS LYTLE LLP**

Craig A. Leslie, Esq. *(Pro Hac Vice pending)*
Jacob S. Sonner, Esq. (*Pro Hac Vice pending*)
One Canalside
125 Main Street
Buffalo, New York 14203-2887
Telephone No. (716) 847-8400
CLeslie@phillipslytle.com
JSonner@phillipslytle.com

*Counsel for Plaintiff*